RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

October 30, 2017

Ms. Nancy Hammer
PO Box 492
Nassau, DE 19969

Dennis L. Schrader, Esq.
R. Eric Hacker, Esq.
Morris James Wilson Halbrook & Bayard,
LLP
107 W. Market Street
P.O. Box 690
Georgetown, DE 19947

RE:     **Nancy Hammer v. Howard Medical, Inc., and Howard
        Industries, Inc.**
        C.A. No.: S15C-05-006 RFS

Dear Parties:

On April 26, 2017, this Court issued an Order granting Defendants' Motion to Dismiss

for Discovery Violations. On May 8, 2017, Plaintiff ("Hammer") filed her Motion for Relief

("Motion"). Defendants' ("Howard") Response was filed on May 30, 2017. On June 1, 2017,

Hammer filed her Reply. On August 18, 2017, Hammer's Motion was denied. On August 28,

2017, Hammer filed a Response opposing the August 18th decision ("Response"). This Response

is nothing more than a Motion for Reargument. Under Rule 59(e), a Motion for Reargument

must be served and filed within five days after issuance of the opinion or decision in question.[1]

---

[1] Super. Ct. Civ. R. 59(e).

Being untimely,[2] the Court cannot jurisdictionally hear Hammer's Response. It is **DENIED** on this basis.

Even if not barred, the Response would not be persuasive. In this regard, several points should be made.

After Hammer failed to appear at the pretrial conference on April 26, 2017, Howard's Motion to Dismiss was granted by letter opinion. Hammer knew the pretrial conference was scheduled for April 26th, as established by the Court's letter of March 13, 2017.[3] Hammer had knowledge of this date as well through the CourtConnect entry on April 3, 2017, which reflected that the pretrial conference date was moved to April 26, 2017.[4] The pretrial conference date was never changed. The trial date of May 1, 2017, as established by the Scheduling Order remained in place.[5]

When Hammer was hospitalized on March 2, 2017 for a diabetic condition, the Deputy Prothonotary asked for medical information in response to Hammer's request to give her more time.[6] On March 7, 2017 and March 13, 2017, the Deputy Prothonotary advised that the Court would grant Hammer time, and asked for a doctor's note so the matter could be temporarily stayed.[7] Thereafter, the Court made three requests for detailed medical information to permit a reasoned consideration of a stay on March 31, 2017, April 5, 2017, and April 19, 2017.[8]

---

[2] Hammer's response to the denial of her Motion for Relief was filed 1 day after the five-day deadline to file a motion for reargument.
[3] Letter from Judge Richard F. Stokes to Parties, March 13, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 250; Trans. ID 60330185). At all times Hammer's record address is: P.O. Box 492, Nassau, Delaware. Dates referenced throughout the decision reflect the day on which the document was "clocked in" to the Court's e-filing system, File & Serve.
[4] The scheduling event portion of CourtConnect reflected the pretrial conference originally set for April 4, 2017 had been moved to April 26, 2017. The entry dated April 3, 2017 reads in pertinent part as follows: "Pretrial conference scheduled for 4/4/17—rescheduled to 4/26/17."
[5] Pretrial Scheduling Order, Feb. 25, 2016 (File & Serve Docket No. 58; Trans. ID 58603468).
[6] File & Serve Docket No. 254; Trans. ID 60375655.
[7] *Id.*
[8] Letter from Judge Richard F. Stokes to Nancy Hammer, March 31, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 259); Letter from Judge Richard F. Stokes to Nancy Hammer, April 5, 2017 (on file with

Sufficient information was not provided. Hammer understood that a stay had not been granted, as she asked for a 90 day temporary stay in a pleading filed on April 10, 2017.[9] Concerning Howard's Motion to Dismiss initially scheduled for April 13, 2017, Hammer asked to attend by phone.[10] Hammer made no effort to attend or even to inquire about the pretrial conference.

On April 24, 2017, the parties were advised by a letter from the Court that "at the pretrial conference, all pending matters will be discussed as requested in defendants' letter of April 21, 2017."[11] The docket included the quoted language. The letter was sent to Hammer's address of record. Also, out of an abundance of caution, it was emailed to Hammer's email account at 1:31 p.m. on April 24, 2017.[12]

Hammer's Motion for Relief from Order was filed on May 8, 2017. Although it had 91 pages of arguments and exhibits, the Court's letter of April 24th is not mentioned anywhere. Howard filed its Reply on May 22, 2017. At several places Howard emphasizes the Court's April 24th letter:

> At page 2: This Court later modified certain dates within the Pretrial Scheduling Order, often to accommodate Plaintiff. The last modification came by way of this Court's March 10, 2017 letter in which the Court set April 26, 2017 as the date for the pretrial conference. The Court reiterated this in a Letter Order dated April 24, 2017, in which the Court informed the parties that it would consider all pending

---

Delaware Superior Court, File & Serve Docket No. 260; Trans. ID 60426199); Letter from Judge Richard F. Stokes to Nancy Hammer, April 19, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 266; Trans. ID 60492733).

[9] Letter from Nancy Hammer to Judge Richard F. Stokes, April 10, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 261; Trans. ID 60453776).

[10] Id.

[11] Letter from Judge Richard F. Stokes to Parties, April 24, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 268; Trans. ID 60509112).

[12] Hammer's email address is nh56199@gmail.com. In the case, Hammer wanted Howard to email filings to her, although there was no legal requirement to do so. Pl.'s Mot. Relief Order, Ex. B (File & Serve Docket No. 283; Trans. ID 60571799). The emailed letter is attached as Exhibit 1.

matters at the parties' April 26 pretrial conference. The Plaintiff knew or should have known of these scheduled events.[13]

Further, at page 5: As noted earlier, on April 24, 2017, the Court's letter order informed the parties that it would consider all pending matters at the parties' April 26 pretrial conference.[14]

Moreover, at page 11: Likewise, Plaintiff had notice and opportunity to appear at the April 26 pretrial conference. The April 26 date was set by the Court's March 10 Letter Order which revised the existing scheduling order to accommodate Plaintiff's alleged medical conditions. The Court reaffirmed that the April 26 hearing would occur, including in its April 24 Letter Order. That April 24 Letter Order expressly stated that "all pending matters [would] be discussed" at the pretrial conference.[15]

On June 1, 2017, Hammer replied to Howard's May 22, 2017 filing. There, Hammer refers to the Court's April 24th letter this way: "The Court's letter of April 24, 2017 did not include the words April 26 as Defendants falsely allege in their response."[16] Further, Hammer asserts: "Defendants falsely misrepresent in their response that this Court's letter of April 24, 2017, 'reaffirmed that the April 26 hearing would occur.' The Court's letter of April 24, 2017 does not include such statement."[17] No claim of ignorance is made.

---

[13] Defs.' Resp. Pl.'s Mot. Relief Order, 2 (internal citations omitted)(emphasis added)(File & Serve 284; Trans. ID 60629171).

[14] *Id.* at 5 (internal citations omitted)(emphasis added).

[15] *Id.* at 11 (internal citations omitted)(emphasis added). The Court notes that this quotation references the previously discussed March 13, 2017 letter as a letter dated March 10, 2017. This discrepancy exists because the letter was dated March 10, 2017, but was not "clocked-in" to the e-filing system, File & Serve, until March 13, 2017, after a weekend. As previously stated, the Court's dates reference the date a document was clocked-in to File & Serve. Under the electronic system, there is generally a 24 hour "roll over" period.

[16] Pl.'s Resp. Defs.' Resp. Pl.'s Mot. Relief Order, 2 (emphasis added)(File & Serve Docket No. 286; Trans. ID 60669421).

[17] *Id.* at 12 (emphasis added).

After the Court's decision of August 18, 2017, Hammer's filing on August 28, 2017 asserts: "With regards to Judge Stokes letter of April 24, 2017, it did **not** include the words April 26 as alleged in Opinion. Further, Plaintiff received this April 24 letter *after* the hearing and pretrial conference were held."[18] The latter argument is a new one which is waived under settled principles of law.[19]

Nevertheless, for purposes of discussion only, it has no merit.

Again, the pretrial conference of April 26th was scheduled in the March 13th letter. Nowhere does Hammer claim she did not know about this date nor deny receiving the March 13th letter. The statement in the Court's letter of April 24th about the pretrial conference plainly carries the April 26th date. To suggest differently is an argument weaved out of whole cloth. The April 24th letter was mailed to her address of record.

Moreover, the Court emailed its April 24th letter to Hammer's email address. In her filings through June 1st, Hammer merely objected to the date of April 26th not being stated near the phrase "at the pretrial conference". While on April 28, 2017 Hammer asked the Court to email her a copy of Howard's April 21st letter, at no time did Hammer make a similar request about the Court's April 24th letter.[20] Again, Hammer did not complain about not receiving or knowing about it before the pretrial conference because she knew better.

Hammer takes an untenable position with her denial of knowledge about Howard's April 21st letter. Obviously, Howard's letter requested that its Motion to Dismiss, originally set for hearing on April 13, 2017, be granted. It is clear that the issues were still alive at this time. Context is important. For over one year and multiple court orders and hearings, Hammer had

---

[18] Resp. Opp'n Op. Order Den. Pl.'s Mot. Relief Order, 9 (italicized and bolded text in original, underlining added)(File & Serve Docket No. 288; Trans. ID 61040623).
[19] *Peters ex rel. Peters v. Texas Instruments, Inc.*, 2012 WL 1622396, at *2 (Del. Super. Ct. May 7, 2012).
[20] Pl.'s Mot. Relief Order, Ex. B (File & Serve Docket No. 283; Trans. ID 60571799).

been directed and told how to properly answer simple interrogatories.[21] By supplementing interrogatory responses prepared on February 19, 2017, but dated February 20, 2017 and filed on April 10, 2017, Hammer contended Howard's pending Motion to Dismiss was moot because she had fulfilled all of her obligations.[22]

However, the subject was passed to give Howard an opportunity to respond by the Court's letter dated April 19, 2017.[23] Hammer has acknowledged knowledge and receipt of the April 19th letter.[24] In the letter Howard was ordered to respond to Hammer's claim that the discovery issues were moot. Hammer knew that Howard's response was due on April 21, 2017, as stated in the letter.[25]

Hammer responded to the Court's April 19th letter. By letter filed on April 24, 2017, Hammer continued to complain about having to properly answer the interrogatories.[26] The letter makes the statement: "The Plaintiff is unable to address the Defendant's letter of April 21, 2017, since the Defendants have failed to provide the Plaintiff with a copy."[27]

There is a parsing of words in this last statement which is concerning. Not getting a copy and not knowing what it is about it are two separate things. The issues were not resolved and Howard wanted its Motion granted, as reflected in the docket. Without undue repetition, the Court's letter of April 24th is tied into Howard's request for relief. Hammer's reference to the April 21st letter reflects her access to docket information. That information would include the

---

[21] *Hammer v. Howard Medical, Inc. and Howard Industries, Inc.,* Order Granting Defendants' Motion to Dismiss for Discovery Violations, April 26, 2017 (File & Serve Docket No. 278; Trans. ID 60523286).

[22] Pl.'s Resp. Defs.' Mot. Dismiss Disc. Violations, 1-2 (File & Serve Docket No. 264; Trans. ID 60453776).

[23] Letter from Judge Richard F. Stokes to Nancy Hammer, April 19, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 266; Trans. ID 60492733).

[24] Letter from Nancy Hammer to Judge Richard F. Stokes, April 24, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 270; Trans. ID 60511625).

[25] *Id.* at 3.

[26] *Id.* The letter was filed at 4:42 p.m., over three hours after the emailing of the Court's April 24th letter. Letter from Nancy Hammer to Judge Richard F. Stokes, April 24, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 270; Trans. ID 60511625).

[27] *Id.* at 6.

6

Court's April 24th letter which called for the settling of *all* pending matters at the pretrial conference, as requested by Howard.[28] Under the electronic filing system, the publically available time of viewing the Court's letter of April 24th and Howard's letter of April 21st would be April 25th, the day before the pretrial conference.[29]

Further, Howard properly served its April 21st letter to Hammer's address of record. Counsel submitted an affidavit dated May 22, 2017 by Maryann Lehman, an employee of that firm. The affidavit verifies that April 21st was the mailing date, the mail was sent to the record address, and the mail was never returned as "undeliverable."[30] Hammer did not dispute the service by a counter affidavit. Affidavits are required at the time of decision.[31]

Notwithstanding, Hammer makes unsworn accusations that counsel fabricated service by manipulating a postage meter to falsely indicate an April 21st mailing date.[32] According to Hammer, the fraud was necessary because Howard's counsel "…found it necessary to deceptively concoct a defense,"[33] *i.e.*, to refute her claim that the mailing of the April 21st letter had to be done after that date. This is a charge of unethical conduct. While litigants enjoy a privilege, unsupported claims of this nature are beyond the pale. Hammer does not have a good faith basis or evidential support for this serious accusation. While any meter has the potential for misuse, nothing more is presented here than Hammer's mere speculation. A lawyer can be

---

[28] The Court's April 24, 2017 letter to the parties is File & Serve Docket No. 268 and is identified by Transaction ID 60509112. Hammer could have brought any matters of importance to her, which litigants commonly do at pretrial conferences.

[29] Hammer had actual notice by virtue of the emailing of the Court's April 24th letter together with service from Howard discussed above.

[30] Defs.' Resp. Pl.'s Mot Relief Order, Ex. A (File & Serve Docket No. 284; Trans. ID 60629171).

[31] *Peters ex rel. Peters v. Texas Instruments, Inc.*, 2012 WL 1622396, at *3(Del. Super. Ct. May 7, 2012)("affidavits may not be submitted in support of a motion for reargument. Accordingly, the Court will not consider the affidavits submitted by Plaintiffs in support of their Motion for Reargument").

[32] Pl.'s Resp. Defs.' Resp. Pl.'s Mot. Relief Order, 5 (File & Serve Docket No. 2861 Trans. ID 60669421).

[33] *Id.*

7

suspended or disbarred for fraudulent conduct of this nature.[34] This is not the first time Hammer has accused Howard's counsel of unethical conduct and has exceeded litigation standards.[35]

With this background, Hammer knew Howard's Motion was pending and that it would be considered at the pretrial conference. Hammer simply ignored it.

Hammer seeks to cast a picture of herself as a victimized, helpless party. This is not so. Hammer's medical condition is not germane to the issues in Howard's motion.[36] Her updated responses filed on April 10, 2017 were actually prepared on February 19, 2017 and dated on February 20, 2017, well in advance of any later diabetic problem.[37] These responses were not compliant, and there is no expectation that they ever would be so given her record.

Moreover, specific information about her medical condition was sought. Hammer did provide a note from a nurse practitioner about an office visit on March 16, 2017.[38] At that time Hammer had been discharged from Beebe Medical Center ("Beebe"). Thereafter, Hammer provided a doctor's note about her admission to Beebe on March 2, 2017.[39] As previously indicated, to ascertain the extent of her problem, Hammer was ordered to provide more detailed information by three letters. The first letter is dated March 31, 2017. It ordered her to provide

---

[34] *In re Shearin*, 721 A.2d 157 (Del. 1998); *Fabrication or Suppression of Evidence as Ground of Disciplinary Action Against Attorney*, 40 A.L.R.3d 169, §7a (originally published 1971).

[35] At many points too numerous to cite, Hammer has personally attacked Howard's lawyers. For example, at a December 2, 2016 hearing, Hammer accused Howard and its counsel of impermissibly engaging in *ex parte* communications with the Court. However, when questioned by the Court Hammer refused to explain how she had come by this information because she had no support for her assertion. *Hammer v. Howard Medical, Inc.*, 2017 WL 1170795, at *4 (Del. Super. Ct. Feb. 14, 2017).

[36] The Court also notes that the diagnosis of diabetes is very common, and is treated by doctors on a very regular basis. What is particularly unique or challenging about Hammer's health condition is not known. Hammer seems to believe that providing detailed information would somehow prejudice her case. Letter from Nancy Hammer to Judge Richard F. Stokes, April 10, 2017, para. 7 (on file with Delaware Superior Court, File & Serve Docket No. 261; Trans. ID 60453776).

[37] Pl.'s Mot. Relief Order, Ex. E (File & Serve Docket No. 283; Trans. ID 60571799).

[38] File & Serve Docket No. 254; Trans. ID 60375655.

[39] Letter from Nancy Hammer to Judge Richard F. Stokes, April 10, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 261; Trans. ID 60453776), Ex. B.

"all necessary medical documentation to the Court no later than April 12, 2017."[40] The documentation was to include "records of your admissions to Beebe Hospital after February 14, 2017 to date." Hammer states that she was not hospitalized at Beebe on February 14, 2017 and, therefore, did not have to provide what should have been easily obtainable records.[41] This explanation is spurious; Hammer did not follow the direction.

On April 5, 2017, a second letter directed Hammer to supply records after February 14, 2017, should she have been hospitalized at hospitals other than Beebe Hospital.[42] On April 10, 2017, Hammer filed an emergency room note by a Beebe Hospital physician that only stated Hammer was admitted on Thursday, March 2, 2017 and that she would be unable to perform regular duties while hospitalized. The requested details were not provided.

By a third letter on April 19, 2017, over a month after she had seen a nurse practitioner, Hammer was ordered: "On the subject of a medical specialist, you must provide the name of the specialist and the date of your appointment by Friday, April 21, 2017."[43] In a response, she claimed to have an appointment with a "specialist's nurse practitioner" on May 9, 2017.[44] In context, a health practitioner associated with a specialist is different from the family practice nurse seen on March 16, 2017. The name of the specialist nurse or the specialist associated with doctors was not provided as required. As a result, the Court was left in the cold.

---

[40] Letter from Judge Richard Stokes to Nancy Hammer, March 31, 2017 (on file with the Delaware Superior Court, File & Serve Docket No. 259).

[41] Pl.'s Resp. Opp'n Op. Order Den. Pl.'s Mot. Relief Order, 23 (File & Serve Docket No. 288; Trans. ID 61040623).

[42] Letter from Judge Richard F. Stokes to Nancy Hammer, April 5, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 260; Trans. ID 60426199).

[43] Letter from Judge Richard F. Stokes to Nancy Hammer, April 19, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 266; Trans. ID 60492733).

[44] Letter from Nancy Hammer to Judge Richard F. Stokes, April 24, 2017 (on file with Delaware Superior Court, File & Serve Docket No. 270; Trans. ID 60511625).

Hammer has never claimed she could not attend or participate in the pretrial conference on April 26, 2017, even if by phone to accommodate any documented issue on her physical condition.

Considering the foregoing, Hammer's Motion remains **DENIED**. Any further submissions will be disregarded.

**IT IS SO ORDERED.**

Very truly yours,

Richard F. Stokes

Attachment: Exhibit 1
cc:     Prothonotary

**Thomas, Myrtle (Courts)**

| | |
|---|---|
| **Sent:** | Monday, April 24, 2017 1:31 PM |
| **To:** | nh56199@gmail.com |
| **Subject:** | S15C-05-006 |
| **Attachments:** | S15C-05-00620170424_13181021.pdf; s15c-05-006 compel20170214_16213381.pdf |
| **Categories:** | Egress Switch: Unprotected |

Attached is a letter from Judge Stokes.

*Myrtle A. Thomas*
Chief Deputy Prothonotary
302-855-7399
myrtle.thomas@state.de.us



**Sussex County Superior Court**
1 The Circle, Suite 2
Georgetown, DE 19947

# Exhibit 1

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

April 24, 2017

Ms. Nancy Hammer
PO Box 492
Nassau, DE 19969

Dennis L. Schrader, Esq.
R. Eric Hacker, Esq.
Morris James Wilson Halbrook & Bayard, LLP
107 W. Market Street
P.O. Box 690
Georgetown, DE 19947

RE:    **Nancy Hammer v. Howard Medical, Inc., and Howard Industries, Inc.**
C.A. No.: S15C-05-006 RFS

Dear Parties:

At the pretrial conference, all pending matters will be discussed as requested in defendants' letter of April 21, 2017. Further, defendants' should file the affidavit requested by the Court at page 10 of the attached Order before the conference.

Ms. Hammer received medical treatment for a medical condition; a Heather Campbell communicated with the civil unit about the emergency nature of the situation. This was an exigency, and the email communications were provided to defendants. The Court will not accept or consider any *ex parte* communications or representations from Heather Campbell. Defendants shall be provided all emails from Campbell.

IT IS SO ORDERED.

Very truly yours,

Richard F. Stokes

Enc:    Court Order dated February 14, 2017
cc:    Prothonotary

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

February 14, 2017

Nancy Hammer
P.O. Box 492
Nassau, Delaware 19969

Dennis L. Schrader, Esq.
R. Eric Hacker, Esq.
Morris James Wilson Halbrook & Bayard, LLP
107 W. Market Street
P.O. Box 690
Georgetown, Delaware 19947

> Re: *Nancy Hammer v. Howard Medical, Inc., Howard Industries, Inc.*
> C.A. No. S15C-05-006 RFS
>
> Date Submitted: December 2, 2016
> Date Decided: February 14, 2017
>
> Upon Plaintiff's Motion to Compel Discovery.
> Granted in Part.
> Upon Plaintiff's Motion for Contempt and for Sanctions.
> Denied for Contempt.

Dear Parties:

This is a breach of an agreement suit to pay commissions by Nancy Hammer ("Hammer") against Howard Medical, Inc. and Howard Industries, Inc. ("Howard"). On or about July 1, 2016, Hammer filed her Second Request for Production of Documents ("RFP") from Howard. On October 20, 2016, Hammer filed both a Motion to Compel and a Motion for Contempt and Sanctions relating to Howard's failure to produce certain documents.

Only items 3 and 4 of the RFP are in dispute. Item 3 sought production of all invoices from Howard to health care providers with which Hammer had dealings "for period commencing March 1, 2013 ending December 31, 2015."[1] Item 4 sought production of all cancelled checks made payable to Howard for "period commencing March 1, 2013 and ending December 31, 2015."[2]

Significantly, Hammer provided a sample for reference to each item. As for item 3, the sample invoice was for Howard Industries, Inc. to a vendor named Westmorland Hospital Excela. There was a net balance due for five items separately shipped with associated information. The subtotal due was $516,614.78 and, after payment of two checks, the net balance due was $16,614.78. The invoice reflects a typical open account between a vendor and a supplier. As to item 4, there is a sample check is from a different vendor, Ohio Valley General Hospital in the amount of $24,932.84 which was deposited in a Howard Industries account # 6400143732.

The RFP is a carefully prepared document. There is no ambiguity. Despite the clarity of the words "invoices and checks," Hammer has sought to expand the scope by adding additional categories informally in various emails to Howard's counsel. Her demand is for separate documents including purchase orders and order confirmations above and beyond the invoices and checks detailed in the RFP. Howard contends that the expanded scope is beyond the RFP. Moreover, in any event, that Howard has voluntarily supplied additional documents beyond invoices and checks.

---

[1] Defs.' Resp. Pl.'s Mot. Compel Disc. & Pl.'s Mot. Contempt Sanctions, Ex. A, docket entry 185.
[2] Id.

2

The RFP does not call for more document production. Hammer's claim in paragraph 1 of her Motion for Contempt is misstated.[3] At all times Howard reserved its objection and never agreed to be bound by any obligation to produce documents beyond invoices and checks for the defined time period like the sample attached to the RFP.

At the time of response, on or about August 1, 2016, Howard requested that Hammer enter a protective order as the items would implicate its economic interests. Hammer refused. The subject of a protective order was discussed during the August 5, 2016 hearing.[4] Hammer was advised that the arrangement would not prejudice her and that should a dispute arise about confidentiality the Court could decide the matter.[5] On more than one occasion, Hammer has incorrectly stated that the Court advised that the documents be released to her first for her review before an order would be entered.[6] Howard provided Hammer with an inventory of these documents.

Thereafter, Howard moved for a protective order on August 8, 2016.[7] By written submissions on August 29, 2016, Howard submitted the invoices and more before the expiration of the discovery period on August 31, 2016. The submissions were by email and later by regular mail. Hammer contended that the PDF electronic format in a zip file could not be opened on her computer. This contention is not persuasive as zip files can be easily opened. Howard offered to and did produce hard copies. Howard opened the zip files and emailed them to Hammer as well.[8]

---

[3] Pl.'s Mot. Contempt Sanctions 2.
[4] Transcript of August 5, 2016 Hearing at 35.
[5] Id. at 36.
[6] Id.
[7] See decision on Motion for Protective Order of even date.
[8] Defs.' Collective Resp. Pl.'s Mot. Compel Disc. Pl.'s Mot. Contempt Sanctions, Ex. E.

3

Concerning the documents produced, at the Court's request, Howard provided information with the Court by letters dated December 30, 2016, January 24, 2017, and February 7, 2017.[9] Hammer had the opportunity to comment, including a letter filed on February 3, 2017. Given the nature of the letter, Howard was asked to respond which it did by its letter of February 7, 2017. Hammer was advised that no further submissions would be permitted.[10]

Upon review of the information provided, the discovery inventory listed 38 invoices for orders placed with health care vendors. This information was provided to Hammer on August 5, 2016. Further, Howard provided five payment records responsive to item 4 in the RFP. The payment records were supplied in lieu of checks as Howard contended it did not possess or have control of the checks.

Moreover, on August 29, 2016, Howard, reserving the right for a protective order, produced hard copies of 38 invoices responsive to item 3. These invoices track the sample provided in the RFP. Howard also provided payment received reports between March 1, 2013 and December 31, 2015 from Excela Health in the amount of $289,684.14, from Heritage Valley Health Systems in the amount of $558,558.24, from Heritage Valley Heath Systems Beaver in the amount of $519.28, from Heritage Valley Health System Sewickley in the amount of $179.56, and from Ohio Valley General Hospital in the amount of $69,846.11. The foregoing payment received reports were voluntarily tendered by Howard.

---

[9] Letter from Dennis L. Schrader and R. Eric Hacker, Morris James Wilson Halbrook & Bayard, to Judge Richard F. Stokes (Dec. 30, 2016)(on file with Delaware Superior Court); Letter from R. Eric Hacker, Morris James Wilson Halbrook & Bayard, to Judge Richard F. Stokes (Jan. 24, 2017)(on file with the Delaware Superior Court); Letter from R. Eric Hacker, Morris James Wilson Halbrook & Bayard, to Judge Richard F. Stokes (Feb 7, 2017)(on file with the Delaware Superior Court).

[10] See Letter from Alan Barraclough, Civil Judicial Case Manager to Judge Richard F. Stokes, to Parties (Nov. 3, 2016)(on file with Delaware Superior Court); Letter from Alan Barraclough, Civil Judicial Case Manager to Judge Richard F. Stokes, to Parties (Nov. 18, 2016)(on file with Delaware Superior Court); Letter from Alan Barraclough, Civil Judicial Case Manager to Judge Richard F. Stokes, to Parties (Feb. 3, 2017)(on file with Delaware Superior Court).

4

Further, on August 31, 2016, Howard voluntarily produced purchase orders and confirmations in PDF format marked confidential. The hard copies come to 79 pages. All of this information provided Hammer with supplemental information on the subject of sales and potential commissions due.

Concerning the inventory, Hammer claims she never requested it. Upon review of the exhibits this contention is not persuasive.[11] Further, Howard responded to her request to learn when Scott Strickland and Bill Salerno left Howard's employment in item 2 of the RFP by providing records. It also produced payroll records. Upon review, Hammer's contention that she did not request them is also not persuasive.[12] As to the payment received reports, Hammer claims they were provided to obfuscate her discovery and to circumvent the discovery process. However, these are business records from which Hammer can derive helpful information to her case. In any event, these records were beyond the scope of the RFP under the RFP, and no consideration will be given to any of Hammer's perceived deficiencies as to these items.[13]

After review, Howard complied with item 3 of the RFP. Any delay was precipitated by Howard's interest in requesting a protective order. This motion was made good faith, although it was not ultimately successful.

---

[11] Pl.'s Mot. Compel Disc.; Letter from R. Eric Hacker, Morris James Wilson Halbrook & Bayard, to Judge Richard F. Stokes (Feb. 7, 2017)(on file with Delaware Superior Court).

[12] Letter from R. Eric Hacker, Morris James Wilson Halbrook & Bayard, to Judge Richard F. Stokes (Feb. 7, 2017)(on file with Delaware Superior Court).

[13] Again, at the Court's request, Howard's February 7, 2017 letter was written to respond to Hammer's letter of February 1, 2017. Hammer was instructed that no further submissions by her would be considered. Hammer's letter of February 5, 2017 will be filed, but not considered. The letter represents a pattern where Hammer files unsolicited letters of responses to responses, despite being instructed otherwise. *See* Letter from Alan Barraclough, Civil Judicial Case Manager to Judge Richard F. Stokes, to Parties (Nov. 3, 2016)(on file with Delaware Superior Court); Letter from Alan Barraclough, Civil Judicial Case Manager to Judge Richard F. Stokes, to Parties (Nov. 18, 2016)(on file with Delaware Superior Court); Letter from Alan Barraclough, Civil Judicial Case Manager to Judge Richard F. Stokes, to Parties (Feb. 3, 2017)(on file with Delaware Superior Court).

RFP item 4 requested checks. Howard objected that it did not possess or control them in its filings of August 29, 2016.[14] No checks were produced provided until December 19, 2016.[15] Howard's argument was that Hammer would have to obtain the checks from the custodian of the banks where the vendors maintained accounts. However, Howard's bank, Regions Bank, retained copies of the checks deposited in Howard's account. Hammer stated that Howard also had copies of the checks in its regular accounting records. This assertion was based on her anecdotal experiences where questions regarding vendors' payments had arisen. Howard denied that it had regularly supplied copies of checks in that situation. The question cannot be decided on the grounds of possession as the record is not developed on that point. Rather the question can be resolved by reviewing the case law on control.

A general overview of the issue is helpful. According to Wright's *Federal Practice and Procedure*, "...Rule 34 provides, in language that has always been in the rule, that discovery may be had of documents and things that are in the 'possession, custody, or control' of a party."[16] The key inquiry turns on whether or not the party had "control" over the information sought. "The concept of 'control' has been construed broadly."[17] If a party has a legal right, authority, or practical ability to obtain the information, even if not in its actual physical control, then the party must produce the information.[18] This point has been reiterated in many cases.[19]

---

[14] Defs.' Collective Resp. Pl.'s Mot. Compel Disc. Mot. Contempt Sanction, Ex. C.

[15] Letter from R. Eric Hacker, Morris James Wilson Halbrook & Bayard, to Judge Richard F. Stokes (December 19, 2016)(on file with Delaware Superior Court).

[16] 8B Wright, Miller, & Coper, *Federal Practice & Procedure* § 2210.

[17] *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006).

[18] *Id.*

[19] *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007)("The test for production of documents is control not location...Under Rule 34, 'control does not require that the party have legal ownership or actual physical possession of the documents at issues; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'")(internal citations omitted); *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 636 (D. Minn. 2000)("In practice, however, other courts 'have sometimes interpreted Rule 34 to require production if the party has practical ability to obtain the documents from another, irrespective of his legal entitlement to the documents.")(internal citations omitted); *U.S.*

6

It is of no consequence that the information sought may be in the possession of a third party who is not party to the suit. "A party may be required to produce documents and things that it possesses even though they belong to a third person who is not a party to the action."[20] However, where a party has assured that he or she will be able to obtain documents, but is then unsuccessful, there is no control.[21] The Court should focus on whether the party made a good faith effort to produce the documents.[22]

Further, it is notable that the Court can require a party to fill out a request form in order to obtain documents. Simply having to request information, for example an SEC transcript, will bring the information under the party's control.[23] Also, confidentiality is not a basis on which to deny production.[24] Yet, there are limits to control. "The relationship between the party and the person or entity having actual possession of the document is central in each case...This special relationship [allowing control] exists when a party is able to command release of the documents by the person or entity in actual possession and is usually the result of statute, affiliation, or employment."[25] For example, the relationship between a patient and doctor is not deemed to fall under this special category of control, so medical records are not under a party's control.[26] Thus,

*Intern. Trade Com'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.D.C. 2005)("Control is defined as the legal right, authority, or ability to obtain documents."); *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995)("It necessarily follows, then, that parties in possession of documents forwarded to them by a federal agency have 'possession, custody or control' within the meaning of Rule 34, notwithstanding the fact that the agency by regulation retains ownership and restricts disclosure.").

[20] 8B Wright, Miller, & Coper, *Federal Practice & Procedure* § 2210.

[21] *Searock v. Stripling*, 736 F.2d 650, 654 (11th Cir. 1984)("...[I]t does not appear from this record that Stripling asserted 'control' over the documents in the sense required for production under Rule 34...We find instead that the primary dispositive issue is whether Stripling made a good faith effort to obtain the documents over which he may have indicated he had control in whatever sense, and whether after making such a good faith effort he was unable to obtain and thus produce them.").

[22] *Id.*

[23] *Preservation Products, L.L.C. v. Nutraceutical Clinical*, 214 F.R.D. 494, 496 (N.D.Ill. 2003)("The fact that Simmons does not currently have copies in his possession is not significant because he has 'control' of those documents by signing the necessary request form.").

[24] *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 236 F.R.D. 177, 180 (S.D.N.Y. 2006).

[25] *Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D.Nev. 1991).

[26] *Clark v. Vega Wholesale, Inc.*, 181 F.R.D. 470, 472 (D. Nev. 1998).

as long as the party has the legal right to request bank records from his or her bank (special relationship), he or she will be considered to have control over the documents.

This subject was discussed at the December 2, 2016 hearing.[27] At that time, Howard agreed Regions Bank had copies of the checks and was willing to provide them. After discussion, the only open issue concerned costs for obtaining the checks. Howard believed a multitude of checks would have to be requested at considerable expense. Howard was to give the Court an estimate of the expense.

On December 19, 2016, Howard advised the Court that the number of checks was less than expected. Checks covered several open items on an account. At that juncture, Howard produced checks for the requested time period, reserving its right for a retroactive protective order.[28]

Howard's position that it did not control and did not have to produce the checks is not persuasive. Under the law, Howard had at least constructive control. The discovery should not have been refused on the basis that Hammer should have to obtain checks from the bank directly. Therefore, Howard did not meet its discovery obligations and in this regard Hammer's point is correct.

While discovery was delayed until December 19, 2016, there was still the pending issue of the protective order. Hammer has not suffered prejudice because the checks have been provided and the voluntary responses of the invoices gave sufficient financial information.

---

[27] Transcript of December 2, 2016 Hearing at 12-13.

[28] The Court totaled the value of the checks produced by Howard and compared them to the invoices along with the other voluntarily produced documents. These appear to be slight duplications and prior offsets. The total comes to $926,700.00. If the Agent Management Agreement is genuine (Howard contends it is a forgery), Hammer would be entitled to 10% of that amount, $92,670.000, for her commissions.

8

Hammer complains that Howard did not produce the records in an organized way.[29] After review, Howard produced them in accord with Rule 34. Howard correctly summarizes the law:

> "Under Superior Court Civil Rule 34, a producing party may produce documents 'as they are kept in the usual course of business,' or it may produce them in a format organized and labeled according to the categories in the production request. The purpose of this section of Rule 34 is two-fold. First, it ensures that documents are provided in a logical format and to prevent the parties from hiding critical documents though volume or disarray. *See Am. Bar Ass'n Section of Litig., Second Report of the Special Committee for the Study of Discovery Abuse*, 92 F.R.D. 137, 177-78 (1980)(discussing the initial adoption of this provision for Federal Rule of Civil Procedure 34). Second, it prevents requesting parties from overburdening producing parties by requesting documents in unique or unusual ways. *See 8B Charles Alan Wright, et al., Federal Practice and Procedure* § 2213 (3d ed. West 2016)(discussing analogous language in Federal Rule of Civil Procedure Rule 34).[30]

Howard gave Hammer separate electronic files of items 3 and 4 of the RFP, invoices and checks. All documents are together, invoices, checks, and payment records. Hard copy papers of the purchase orders and confirmations were done in the same fashion.

Additionally, Howard argues that Hammer waived her right to file a motion to compel. The Court remarked that Hammer could file a motion at the August 5, 2016 hearing. Hammer waited until October 20, 2016 to file her Motion to Compel. The cited authority is *Christian v. Counseling Research Associates, Inc.*[31] The subject matter concerned the use of expert reports. The Supreme Court found that if a party did not move forward until an objection to a passed deadline date, then there could be no complaint about later produced reports. While the Motion to Compel was filed in October, Hammer certainly made her objections known at the August hearing. In this context, I do not find Howard's argument to be persuasive.

---

[29] Letter from Nancy Hammer to Judge Richard F. Stokes (Dec. 23, 2016)(on file with Delaware Superior Court).
[30] Letter from Dennis L. Schrader and R. Eric Hacker, Morris James Wilson Halbrook & Bayard, to Judge Richard F. Stokes (Dec. 30, 2016)(on file with the Delaware Superior Court).
[31] 60 A.3d 1083, 1088 (Del. 2013).

9

In sum, I find there was substantial justification to withhold discovery pending resolution of the protective order through the discovery cutoff date of August 31, 2016. Howard had a reasonable belief that an order would be entered and acted accordingly. When the discovery cutoff passed, Howard provided the invoices, seeking to have the protective order made retroactive. Hammer's claims to not receiving or being able to open the zip files are not persuasive.

In Hammer's letter filed on February 3, 2017, she claims checks were not provided for certain invoices listed in paragraph 4.[32] Howard contends that those checks where not within the time period requested in the RFP. Howard should file an affidavit to confirm that point and no further action will be taken.

While Howard's position on control of the checks was misplaced, the checks were later supplied. There was a delay of approximately four and a half months. Hammer had to file the Motion which resulted in the belated production of the checks. While there was a discovery violation, Howard's conduct does not rise to the level of contempt.[33] An order to compel for production of checks is appropriate, but the production has rendered it moot.

As the documents have been provided, only the check portion of the dispute is sanctionable. In that regard, an offset can be made against Hammer's obligations to Howard for her discovery violations. Hammer shall submit an affidavit on or before March 3, 2017 and Howard shall reply on or before March 13, 2017 on the amount.

**IT IS SO ORDERED.**

---

[32] Letter from Nancy Hammer to Judge Richard F. Stokes (Feb. 3, 2017)(on file with Delaware Superior Court).
[33] Black's Law Dictionary defines contempt as "conduct that defies the authority or dignity of a court or legislature. Because such conduct *interferes with the administration of justice*, it is punishable by fine or imprisonment." Black's Law Dictionary (9th ed. 2009) , available at Westlaw BLACKS (emphasis added).

10

Very truly yours,

Richard F. Stokes, Judge

Cc: Prothonotary
    Nancy Hammer
    Dennis Schrader, Esq.
    R. Eric Hacker, Esq.

2011 FEB 14 PM 3:40
SUSSEX COUNTY

11